NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HOWMEDICA OSTEONICS CORP., a subsidiary of STRYKER CORPORATION,<br> Plaintiff,<br><br>v.<br><br>ZIMMER, INC., et al,<br> Defendant. | : : : : : : : : : : : | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 11-1857(DMC)(JAD) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Motion for Summary Judgment by Defendants Zimmer Inc., Zimmer US, Inc., and Zimmer Spine, Inc. (collectively "Zimmer Corporate Defendants" or "Zimmer") (ECF No. 254); Paul Graveline ("Defendant Graveline" or "Graveline") (ECF No. 252); Christopher Giebelhaus ("Defendant Giebelhaus" or "Giebelhaus")(ECF No. 256) ; and Individual Defendants, Christian Loughran ("Loughran"), Ryan Lively ("Lively"), Ryan Hermansky ("Hermansky"), Zach Hilton ("Hilton"), Thomas Fallon ("Fallon"), Ruben Burciaga ("Burciaga"), Alex Poulemanos ("Poulemanos") and Brian Rowan ("Rowan"), (together, "Individual Defendants") (ECF No. 251); (collectively, Individual Defendants, Zimmer, Giebelhaus and Graveline, "Defendants") pursuant to FED. R. CIV. 56. Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After considering the submissions of all parties, it is the decision of this Court for the reasons herein expressed that Defendants'

Motion for Summary Judgment is **granted in part, denied in part.**

## I.   BACKGROUND

The facts are well known to the parties, and are stated in the parties extensive pleadings and this Court's March 3, 2012 Opinion. (ECF No. 265).


## II.   STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  The moving party bears the burden of showing that there is no genuine issue of fact.  Id.  "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party."  Id.  The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor.  See FED. R. CIV. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party."  Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. App'x 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

### III.    DISCUSSION

#### A. Defendants Proximate Causation Argument Fails

Zimmer Corporate Defendants, and by incorporation, Defendants Graveline and

Giebelhaus, argue that they are entitled to summary judgment on all Stryker's claims because

Stryker has failed to offer evidence that the Defendants proximately caused Stryker's alleged

damages. (Zimmer Corp. Def's Mot. for Summ. J., 4, Feb. 24, 2012, ECF No. 254-2; see also

Def. Graveline Mot. for Summ. J., 11, Feb. 24, 2012, ECF No. 252; Def. Giebelhaus Mot. for

Summ. J., 3, Feb. 24, 2012, ECF No. 256). "Proof required to establish proximate cause does not

need to be absolute, but only one of probability or likelihood." Crowley v. Chait, Civ. No. 85-

2441, 2004 U.S. Dist. LEXIS 27238, at *22 (D.N.J. Aug. 25, 2004) (citing Parks v. Pep. Boys,

659 A.2d 471, 474 (N.J. Super. Ct. App. Div. 1995)). Zimmer argues that Stryker has "failed to

present even a scintilla of competent evidence to suggest that it suffered damages as a proximate

result of the alleged conduct of the [Defendants]." (Zimmer Corp. Def's Mot. for Summ. J. 4).

Defendants point to Stryker's experts, arguing that "Stryker's Rule 30(b)(6) designee on

damages, Dan Watson, conceded that Stryker could not provide any factual support of the

causation element of its claims." (Id. at 5) (internal citations omitted). Defendants also state that

Stryker's damages expert, Rodney Crawford, "conceded that he 'assumes findings of liability on

the part of the Defendants' and assumes Stryker's 'future projected losses are solely attributable

to Zimmer's conduct.'" (Id.) (internal citations omitted). Stryker contends that there is a genuine

issue of material fact with regards to proximate cause, and therefore the issue should be decided

by a jury, not the Court. (Pl.'s Resp. in Opp'n to Zimmer Corp. Def.'s Mot. for Summ. J. 10,

Mar. 30, 2012, ECF No. 280).

Defendants argue that "Mr. Crawford's assumptions - on which Stryker relied exclusively to meet its burden as to proximate causation - are fatal to Stryker's claims." (Zimmer Corp. Def's Mot. for Summ. J. 4). Defendants rely on <u>In re Paoli Railroad Yard PCB Litig.</u>, 35 F. 3d 717, 763-64 (3d Cir. 1994), to support their position that summary judgment is appropriate where an expert's report simply assumed causation of harm. (Zimmer Corp. Def's Mot. for Summ. J. 6.) (<u>citing</u> <u>In re Paoli</u>, 35 F. 3d at 763). The Court in <u>Paoli</u> was dealing with facts distinguishable from this case. There, the Court upheld exclusion of the plaintiff's medical expert's testimony "to the effect that toxic tort plaintiffs' illnesses were caused by PCBs, as expert's opinion was only hypothesis which he had yet to verify or disprove." <u>Id.</u> Among other things, the Court found that the expert had not examined the plaintiffs or reviewed their medical records, and thus "could not even reliably conclude that the plaintiffs had any illness." <u>Id.</u>

Here, unlike <u>Paoli</u>, Stryker's expert "made calculations based on interviews of personnel with knowledge, review of depositions, review of relevant business records, allocations of expenses and projections based on historical trends." (Pl.'s Resp. 13) (internal citation omitted). Stryker's expert's assertions are not bald "assumptions" as Zimmer asserts. The expert's testimony, when compared with Zimmer's expert's testimony, creates a genuine issue of material fact with regards to the issue of proximate causation. Stryker has presented evidence that its employees, at both the Las Vegas branches and Arizona branches, were approached by Zimmer employees and they subsequently left the employ of Stryker to work for Zimmer. Stryker argues that "the evidence shows that Stryker suffered an immediate sales decline consistent with what [Defendants] Loughran and Fallon projected to Zimmer they and their teams controlled and

4

would take if they left Stryker." (Pl.'s Resp. 11) (internal citations omitted). "Proof of causation may rest upon legitimate inferences, so long as the proofs will justify reasonable and logical inferences as distinguished from mere speculation." Crowley v. Chait, 2004 U.S. Dist. LEXIS 27238 at *22. It is possible to infer from the evidence presented that Zimmer's actions caused Stryker's damages.  See also Lamorte Burns & Co. v. Walters, 770 A.2d 1158, 1170 (N.J. 2001) ("Causation is demonstrated where there is proof that if there had been no interference there was a reasonable probability that the victim of the interference would have received the economic benefit."(citations omitted)); Cent. Lewmar, L.P. v. Gentilin, No. 03-4671, 2005 U.S. Dist. LEXIS 45902, at *15 (D.N.J. June 1, 2005) (Causation was proved where Central Lewmar had a reasonable expectation of an economic benefit, and there was a "reasonable probability that [their customer] would have continued to purchase from Central Lewmar absent defendant's actions.")

Stryker has presented sufficient evidence to create a question of fact that is proper for jury determination. See Crowley v. Chait, 2004 U.S. Dist. LEXIS 27238 at *22. ("In general, the issue of proximate cause is left to the jury for its factual determination. The issue can be addressed, as a matter of law, only where the outcome is clear or when highly extraordinary events or conduct takes place. However, where there is a factual dispute as to events and circumstances which caused injuries, proximate cause is a jury question.") Therefore it is inappropriate at this time to grant summary judgment on all Stryker's claims, as there is a genuine issue of fact as to whether Zimmer proximately caused Stryker's damages.

**B.   Zimmer, Inc.'s Liability**

Zimmer Corporate Defendants argue that as there is "no competent evidence sufficient to establish a genuine issue of material fact that Zimmer, Inc. engaged in any of the actions that give rise to Stryker's claims," summary judgment is appropriate in favor of Zimmer Inc. on every count. (Zimmer Corp. Def's Mot. for Summ. J. 8). In support of this, they cite to Stryker's expert Edward Macy, who "testified that Stryker named Zimmer, Inc. as a Defendant because it did not understand the relationship between and among Zimmer entities." (Id.) (citing Edward Macy's Dep. Tr. at 119:23-120:19[1], Sept. 13, 2011. A Rule 30(b)(6) witness is "designated to testify on behalf of a company, corporation or government agency", and the testimony of a 30(b)(6) witness is binding on the entity and goes beyond the individual's personal knowledge. FED. R. CIV. P. 30(b)(6). While the testimony is binding on Stryker, the Court does not agree with Defendant that it establishes, with no questions of material fact, that Zimmer Inc. is not liable to Stryker for the claims asserted against them. The level of involvement of each corporate entity is a question of fact, and it is inappropriate at this stage to dismiss Zimmer, Inc. from the suit.

### C.  Stryker's Tort Claims are Barred Against Individual Defendants Pursuant to the Economic Loss Doctrine

Stryker's primary allegation against the Individual Defendants is for breach of contract; specifically that they violated the restrictive covenants contained in their Employment Agreements. (Pl.'s Compl. ¶¶ 193-200). Stryker also alleges six additional tort theories against the Individual Defendants. (Id.). Individual Defendants argue that "because the factual allegations that support Stryker's tort claims are not separate and distinct from those it alleges in support of

---

[1]"You know, Mr. Brothen, Mr. Graveline were employees of Zimmer. The delineation of the – of the, company Zimmer Inc., versus Zimmer U.S. versus Zimmer Spine, I don't think we fully understand that. And I - and I believe that's part of our process as well, is to understand that delineation. So I think - I don't know if I - I'm totally knowledge[able] to answer that question."

its breach of contract claims (indeed they are identical), each of Stryker's tort claims against the Individual Defendants is barred by the economic loss doctrine." (Individual Def.'s Mot. for Summ. J. 6).

"New Jersey's economic loss rule bars plaintiffs with contract claims from recovering in tort for economic losses in the absence of personal injury or property damage." Scherillo v. Dun & Bradstreet, Inc., No. 10-CV-829, 2011 U.S. Dist. LEXIS 70680, at *6 (D.N.J. June 30, 2011) (citing Saltiel v. GSI Consultants, Inc., 788 A.2d 268, 277 (N.J. 2002)); See also Trico Equip., Inc. v. Manor, No. 08-CV-5561, 2011 U.S. Dist. LEXIS 17936, at *8 (D.N.J. Feb. 22, 2011) ("Trico II"); Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F. Supp 2d 557, 562 (D.N.J. 2002).

Plaintiff argues that the economic loss doctrine applies only to products liability claims, not to business tort claims. (Pl.'s Resp. to Individual Def.'s Mot. for Summ. J. 3, Mar. 30, 2012, ECF No. 284). The Court disagrees. Where the underlying facts are not separate and distinct between the tort action and the contract action, the economic loss doctrine bars the claim in tort. In Bracco, the Court stated that "the economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract. Bracco, 226 F. Supp. 2d at 562. The economic loss doctrine provides that a tort remedy does not arise from a contractual relationship unless the breaching party owed an independent duty imposed by law. Saltiel, 788 A.2d at 280.

Plaintiff cites to Gleason v. Norwest Mortg., Inc., 243 F. 3d 130, 144 (3d Cir. 2001) as supporting the proposition that "tort claims based on acts or omissions that also give rise to contract claims should be decided on their merits." (Pl.'s Resp. in Opp'n to the Individual Def.'s

7

Mot. for Summ. J. 4). This is inconsistent with the Third Circuit's holding. The Court stated that the New Jersey District Courts "still hold that fraud claims not extrinsic to underlying contract claims are not maintainable as separate causes of action." Gleason, 243 F. 3d at 144. Further, as the NJ Supreme Court had not ruled on the issue, the Court chose to "avoid predicted New Jersey law by deciding the fraud issue on the merits." Id.

The tort claims raised by Stryker against the Individual Defendants arise from the contracts that each defendant had with their employer, Stryker. The economic loss doctrine bars each of the tort claims, and thus summary judgment is granted for these claims against the Individual Defendants. Each claim will be discussed in turn below.

### D.  Count I: Breach of Contract Against Individual Defendants

Count I alleges that "the Individual Defendants breached, and continue to breach, their post-employment contractual obligations owing to Stryker by soliciting, inducing or influencing, or attempting to solicit, induce or influence, persons engaged as an employee, independent contractor or agent of Stryker to terminate their employment and/or business relationship with Stryker; by soliciting, attempting to solicit or in any other way, attempting to influence Stryker's customers to alter or terminate their business relationship; [and] by misusing Stryker's confidential and proprietary information." (Pl.'s Compl. ¶ 197). Further, Stryker asserts that as a result, it has been irreparably injured and continues to face irreparable injury. (Id.) As there are clear questions of fact in relation to the actions of all the Individual Defendants, it would be premature to grant summary judgment on the breach of contract claims, and thus the motion is denied as to Count I.

8

1. Defendant Graveline

Defendant Graveline argues that there is no competent evidence to support the breach of contract claim against him, stating "Stryker has not marshaled evidence during discovery that credibly rebuts Mr. Graveline's unimpeached deposition testimony that he was not engaged in sales activity for Zimmer, did not recruit or otherwise solicit any Stryker employees, and did not engage in any conduct that ran afoul of his non-compete agreement with Stryker." (Def. Graveline's Mot. for Summ. J. 12).

Graveline's Agreement with Stryker specifically restricted him from (1) working for any conflicting organization, in which the services Graveline could provide enhanced the use or marketability of the conflicting product or services; and (2) doing any act which may result in the impairment of the relationship between Stryker and its employees, independent contractors or agents. (Pl.'s Resp. to Def. Graveline's Mot. for Summ. J.13) (internal citations omitted). In its Opposition to the Summary Judgment Motion, Stryker points to Graveline's role in hiring Kevin Brothen at Zimmer. Stryker cites to an email, in which Brothen writes, "you have done enough for me, in the fact that you helped find this opportunity for me" as evidence of Graveline's involvement in Brothen's recent (at the time of the email) hiring. (Id. at 16).

Defendant Graveline argues that there is only one email between he and Brothen, where he was merely cc'd evidencing the lack of evidence to create a material issue of fact as to his recruitment or solicitation efforts.

Where there is conflicting evidence, issues of credibility are raised. These credibility issues need to be resolved by a jury. Therefore, there are genuine issues of material fact not

amenable to disposition at summary judgment, and Defendant Graveline's Motion is denied.

2. Individual Defendants

(1) Unclean Hands

In their Motion for Summary Judgment, the Individual Defendants argue that the doctrine

of unclean hands bars Stryker from enforcing the restrictive covenants. (Individual Def.'s Mot.

for Summ. J. 18). They state:

> Stryker has regularly hired its competitors' employees despite the existence of
> restrictive covenants similar to those at issue in this case. Stryker repeatedly has been
> sued by competitors for engaging in the very same conduct that it alleges is unlawful
> in this case, and defends those actions by claiming that its conduct constitutes lawful
> competition. The Individual Defendants agree that aggressive competition within the
> spinal implants industry is lawful, and that their conduct in this case is not actionable.
> However, Stryker cannot have it both ways. Under the doctrine of unclean hands, if
> Stryker is correct that the type of aggressive competition in which they engage and
> over which they have been sued is lawful, Stryker cannot seek relief against the
> Individual Defendants for that same type of conduct.

(Id.) Stryker argues that their claims are not barred by the doctrine of unclean hands, and the

Court agrees. Unclean hands applies when (1) a party seeking equitable relief; (2) is guilty of

conduct involving fraud, deceit, unconscionability, or bad faith; (3) directly related to the matter

in issue; (4) that injures the other party; and (5) affects the balance of equities between the

litigants. " In re New Valley Corp., 181 F.3d 517, 522-23 (3d Cir. 1999).  However, even if these

elements are not satisfied, courts still "may exercise a wide range of discretion in refusing to aid

a litigant coming into court with unclean hands" Precision Instrument Mfg. Co. v. Auto. Maint.

Mach. Co., 324 U.S. 806 (1945). Because Stryker's own behavior does not "directly relate to the

matter in issue" the defense should fail.

Defendants also fail to show any gross inequity or that Stryker's request for remedy is unconscionable. The Individual Defendants rely on the hope that Stryker's past unconscionable actions will sufficiently shock the court to invoke its sense of equity in the instant claim. However, since the unclean hands doctrine requires some conflict of equity to the extent that a court can "clean" the hands of the Plaintiff through equitable remedies, the defendants' claim is insufficient to support a defense premised on this doctrine. The absence of an equitable dispute and the failure to show any relationship between Stryker's past behavior and the instant matter both preclude the viability of an unclean hands defense for the Defendants.

Additionally, in the Third Circuit, a defendant asserting an unclean hands defense must introduce "clear, convincing evidence of 'egregious' misconduct." Citizens Fin. Group, Inc. v. Citizens Nat'l Bank, 383 F.3d 110, 129 (3d Cir.2004). "Egregious misconduct" can take the form of "fraud, unconscionability, or bad faith on the part of the plaintiff." S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 377 n. 7 (3d Cir.1992); see also Sanofi–Aventis v. Advancis Pharm. Corp., 453 F.Supp.2d 834, 856–857 (D.Del.2006) (rejecting the "unclean hands" defense and holding that although defendant put forth some evidence that plaintiffs may have had a competitive purpose in filing the action, "clear, convincing and unequivocal evidence" of "egregious" conduct was lacking); Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 174 (3d Cir. 2001) ("The equitable doctrine of unclean hands applies when a party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation.") Courts in the Third Circuit require there to be a close, identifiable nexus between the plaintiff's alleged misconduct and the defendant's conduct that is the subject of the plaintiff's

action. Id.; Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corp., 441 F.Supp.2d 695, 709 (M.D.Pa.2006) (quoting Highmark, 276 F. 3d at 174).

Courts will apply the doctrine of unclean hands "only for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication. " Highmark, 276 F.3d at 174 (internal citations omitted); Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P., 292 F.Supp.2d 594, 610 (D.N.J.2003) ("[C]ourts do not apply the unclean hands doctrine just because plaintiffs have engaged in some inequitable conduct; rather, the inequitable conduct identified by the defendant must evince a very close nexus to the defendant's own misconduct that initially gave rise to the suit.").

Finally, to establish a defense of unclean hands, the defendant must allege that the defendant was injured "as a result of the misconduct." Pharmacia Corp., 292 F.Supp.2d at 610 ; see also Santana Prods., 249 F.Supp.2d at 523 (requiring a defendant to show that the plaintiff's wrongdoing injured the defendant). The Third Circuit has also held that injury to the public interest is a relevant consideration as well. Citizens Financial, 383 F.3d at 129 (noting that "the extent of actual harm caused by the conduct in question, either to the defendant or to the public interest, is a highly relevant consideration") (quoting Republic Molding Corp. v. B.W. Photo Utilities, 319 F.2d 347, 349–50 (9th Cir.1963)).

Even if there was a nexus between Stryker's behavior and that of the Defendants in the instant matter, it would certainly not be "egregious," "unconscionable" or "inequitable." Additionally, Defendants cannot assert that there has been an injury—either to Defendants or to the "public interest"—that warrants imposing an "unclean hands" defense.

12

The Individual Defendants next argue that the Individual Defendants are entitled to summary judgment on the breach of contract claim for either not using or disclosing confidential information or soliciting Stryker's customers. Poulemanos, Hilton, Rowan, and Burciaga argue there is no evidence they used/disclosed confidential information nor solicited Stryker's customers; Fallon and Loughran assert there is no evidence they solicited Stryker's customers; and Hermansky asserts there is no evidence he used/disclosed confidential information.

(2) Use or Disclosure of Stryker's Confidential Information

Individual Defendants argue that "Stryker has adduced no evidence in support of its breach of contract claim that Individual Defendants Poulemanos, Hilton, Rowan, Hermansky or Burciaga disclosed or used Stryker's confidential information." (Individual Def.'s Mot. for Summ. J. 25). As a threshold matter, the parties disagree as to whether the covenants prohibit possession of confidential information, or only the use and disclosure of said information. The Employee Patent and Confidential Information Agreement ("Confidentiality Agreement") attached to every Stryker Non- Compete Agreement, provides, in part:

> That upon termination of employment with the Company, all documents, records, notebooks and similar repositories of or containing confidential information, including copies thereof, then in his/her possession, whether prepared by the Employee or others, shall be left with or returned to the Company.

(Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 25) (internal citations omitted). Plaintiffs argue that "accordingly, the Individual Defendants' possession of Stryker's confidential and proprietary information after the moving Defendants' resignations on March 21, 2011 is, with or without use or disclosure, a clear breach of contract." (Id.) Stryker's forensic expert, Greg Kelley, examined the Individual Defendants electronic devices and found hundreds of documents containing the words "Stryker" or "Howmedica", "indicating that they were authored at Stryker." (Id.) (internal

13

citations omitted). The Individual Defendants argue that Stryker has not adduced "any evidence that, by simply accessing documents, these Defendants necessarily used or disclosed any Stryker confidential information that may have been contained in the documents." (Individual Def.'s Mot. for Summ. J. 29). Even if the contractual provision did not contemplate mere possession of the information, the mere presence of Stryker documents on the Individual Defendants electronic devices creates a material dispute of fact sufficient to overcome summary judgment. Additionally, the mere possession of the information creates an issue of fact as to whether the Defendants breached the contractual provision requiring them to leave all documents with the Company upon leaving. Based on the number of Defendants and the number of conflicting factual assertions, it would be inappropriate to grant summary judgment, even partial summary judgment, as to whether any of the Individual Defendants breached their contracts by using or disclosing confidential information.

(3) Soliciting Stryker's customers

Individual Defendants argue that "as to each of Fallon, Loughran, Poulemanos, Hilton, Rowan, and Burciaga, the only admissible evidence demonstrates that at most, they each notified their respective surgeons that they were leaving Stryker and would be working at Zimmer." (Individual Def.'s Mot. for Summ. J. 31). The Employment Agreements prohibit any of the Individual Defendants from "solicit[ing], attempt[ing] to solicit, assist[ing] another to solicit Company's customers, or in any other way, attempt[ing] to influence Company's customers to alter or terminate their business relationship with Company." (Id. 32) (internal citations omitted). Defendants admit that they "contacted some of their former customers to inform them that they were leaving Stryker." (Id.) The evidence Plaintiff alleges also creates a fact issue so that

14

summary judgment is denied. The conflicting testimony of witnesses invokes credibility concerns that are best left to a jury to decide.

### E.  Count II: Breach of Fiduciary Duty Against Defendants Graveline, Giebelhaus, and Individual Defendants

In Count II, Plaintiff asserts that Stryker Branch Managers, Fallon and Loughran, Styker Sales manager, Lively, and Stryker Sales Representatives, Burciaga, Giebelhaus, Hermansky, Hilton, Rowan and Pouelmanos all owed Stryker a fiduciary duty. (Pl.'s Compl. ¶¶ 202-204). Plaintiff asserts,

> this fiduciary duty included, among other things, a duty not to misappropriate business and business opportunities, a duty not to solicit, directly or indirectly, Stryker employees for employment with competing businesses, a duty of loyalty not to be deceitful and a duty generally not to do anything on behalf of a competing business while employed by Stryker.

(Id.) Under New Jersey law, every "employee owes a duty of loyalty to [his] employer..." Auxton Computer Enter., Inc. v. Parker, 416 A.2d 952, 965 (N.J. Super. Ct. App. Div. 1980). The duty requires that the "employee must not, while employed, act contrary to the employer's interests." Id.

However, where a breach of a fiduciary duty is intrinsic to the breach of contract, the economic loss doctrine bars tort claims for breach of the duty of loyalty. Trico II, 2011 U.S. Dist. LEXIS 17936, at *16-18. In Trico II,  Defendant Manor, while employed at Trico, suggested that a Trico customer take some its business to competitor Skyworks. Id. The Court held that "because Manor advised Skyworks to take is business to one of Trico's competitions, Manor breached his contractual obligation. Therefore, Manor cannot bring a claim for breach of the duty

of loyalty." Id.; See State Capital Title & Abstract Co., 646 F. Supp. 2d 668, 678 (D.N.J. 2009)
(finding that economic loss doctrine bars plaintiff's state breach of the duty of loyalty claim).

Here, the allegation of breach of fiduciary duty is not extrinsic to the underlying
agreement. The facts alleged are the same as those alleged in the breach of contract claim, and
the fiduciary duties Stryker alleges the Individual Defendants owed are addressed explicitly in
the Employment Agreements. (Individual Def.'s Mot. for Summ. J. 15; see Employment
Agreements, Exhibits A-J, ECF. No. 154-2 - 154-11.) Accordingly, Individual Defendants
Motion for summary judgment on the breach of fiduciary duty of loyalty is granted.

### F. Count III: Stryker's Misappropriation of Trade Secrets Claim Against All Defendants

In Count III of the Amended Complaint, Stryker asserts a claim for actual or threatened
misappropriation of trade secrets, claiming that it "is threatened with losing customers,
employees, its trade secrets and good will." (Pl.'s Compl. ¶ 226).

#### (1) Zimmer Corporate Defendant and Defendants Giebelhaus and Graveline

Zimmer Corporate Defendant, and by incorporation Defendants Giebelhaus and
Graveline, argue that summary judgment on this claim is required because Stryker has both
"failed to protect any purported trade secrets, and because Stryker has failed to proffer any
competent evidence that creates a genuine issue of material fact that the Zimmer Corporate
Defendants received, used or misappropriated any Stryker information that was protected as a
trade secret." (Zimmer Corp. Def's Mot. for Summ. J. 23).

As to the conflict of law analysis, Arizona, Nevada and New Jersey all generally define a
trade secret as information which derives independent economic value from not being generally

16

known or ascertainable by others, and which is the subject of efforts to maintain its secrecy.

Compare Prof'l Recovery Servs., Inc. v. Gen. Elec. Capital Corp., 642 F. Supp. 2d 391, 409 n. 16

(D.N.J. 2009); with Enter. Leasing Co. v. Ehmke, 3 P. 3d 1064, 1069 (Ariz. Ct. App. 1999); with

Finkel v. Cashman Prof'l, Inc., No. 52520, 2012 Nev. LEXIS 24, at *11 (Nev. Mar. 1, 2012).

Additionally, all three states apply the factors set forth in the Restatement of Torts § 757 to

determine whether certain information constitutes a trade secret. Ehmke, 197 Ariz. at 149 n. 6;

P.C. of Yonkers, Inc. v. Celebrations!, No 04-4554, 2007 U.S. Dist. LEXIS 15216, at *31-32

(D.N.J. Mar. 2, 2007).

Zimmer Corporate Defendants first argue that Stryker failed to maintain the secrecy of its

purported trade secrets because "during the preliminary injunction hearing in this case on May 9,

2011, numerous witnesses testified in open court about the identity of the surgeons who use

Stryker products, pricing of Stryker products, Stryker's financial figures, compensation

information for Stryker sales representatives, and how certain surgeons prefer to operate.

(Zimmer Corp. Def.'s Mot. for Summ. J. 24). They argue that this, coupled with Stryker's failure

to take action to "preserve any purported confidentiality of the information," and the alleged fact

that the Zimmer Corporate Defendants "received sales information from a third party recruiter,"

makes the information not sufficiently secret, nor the subject of "efforts that are reasonable under

the circumstances to maintain their secrecy." (Id. 24, 26). This Court disagrees. "Secrecy is

essentially a question of fact. . . [N]o one factor is dispositive of whether [plaintiff] took

reasonable precautions to protect its purported trade secrets. The test is one of reasonable, not

absolute, precautions, and the jury will be charged with considering the entire record to

determine whether [plaintiff's] alleged trade secrets were, in fact, secret." Merckle GmbH v.

17

<u>Johnson & Johnson</u>, 961 F. Supp. 721, 731-32 (D.N.J. 1997) (citations omitted) (internal quotation marks omitted).

Additionally, Zimmer argues that "Stryker's alleged trade secrets do not derive independent economic value from not being generally known, and were not acquired by improper means." (Zimmer Corp. Def's Mot. for Summ. J. 25). This too, is a question of fact. With regard to economic value, Stryker alleges that Zimmer misappropriated Stryker's confidential sales projections and personnel/compensation information. While Zimmer Corporate Defendants cite to cases that state the proposition that salary information "lacked the necessary element of independent economic value," Stryker alleges Zimmer misappropriated far more than just salary information. (<u>See</u> Pl.'s Compl. ¶¶ 220-222; Pl.'s Resp. in Opp'n to Zimmer Corp. Def.'s Mot. for Summ. J. 39.) Additionally, the means by which Zimmer allegedly acquired this information is a question of fact. Zimmer claims it received it "unsolicited and unprompted," while Stryker alleges that "Loughran breached their duties by disclosing this information to Zimmer, whether through a recruiter or directly." (Zimmer Corp. Def.'s Mot. for Summ. J. 26; Pl.'s Resp. in Opp'n to Zimmer Corp. Def.'s Mot. for Summ. J. 38). Plaintiff has presented sufficient evidence such that a reasonable jury could conclude that Zimmer "knew or had reason to know that the trade secret was acquired by improper means." Summary judgment is thus denied with regard to Stryker's misappropriation of trade secrets claim.

18

(2) Individual Defendants[2]

As to Stryker's misappropriation of trade secrets against the Individual Defendants, the economic

loss doctrine applies, and thus the claims are barred. See supra Part III.C. Individual Defendants

are in violation of their restrictive covenants if they misappropriated trade secrets; thus the tort

claim arises out of the breach of contract claim. Summary judgment is thus granted to the

Individual Defendants as to Count III.

### G.  Count IV: Stryker's Tortious Interference With Contract Claim Against Zimmer Corporate Defendant

In Count IV of the Amended Complaint, Stryker asserts a claim against the Zimmer

Corporate Defendants for tortious interference with the Individual Defendants' contracts with

Stryker. (See Pl.'s Amend. Compl. ¶¶ 227-233.)

First, this Court must engage in a choice of law analysis, and determine whether to apply

the law of New Jersey to the claim, or in the alternative, the laws of Arizona or Nevada. Zimmer

argues that Nevada or Arizona law should apply, based on the "significant relationship" test,

while Plaintiff Stryker argues that New Jersey should apply. In a diversity action, the forum

state's choice-of-law rules apply.  Gen. Star Nat'l Ins. Co. v. Liberty Mut. Ins. Co., 96 F.2d 377,

379 (3d Cir. 1992) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).

"Under New Jersey law, choice-of-law determinations involve a two-step inquiry. In the first

step, a determination is made as to whether or not an actual conflict exists between the substance

of the laws of each respective potential forum."  Cooper v. Samsung Elecs. Am. Inc., 374 Fed.

Appx. 250, 254 (3d Cir. N.J. 2010) (citing Lebegern v. Forman, 471 F.3d 424, 430 (3d Cir.

---

[2] As Defendants Graveline and Giebelhaus did incorporated Zimmer's moving papers, they did not make the economic loss doctrine argument. As to

2006)).  "If no actual conflict is found to exist, 'the inquiry is over and, because New Jersey would apply its own law in such a case, a federal court sitting in diversity must do the same.'" Id. (citing Lebegern, 471 at 428). "If, however, an actual conflict is found to exist, the inquiry proceeds to the second step."  Id.

The second step requires application of the "most significant relationship" test.  Id. "In November 2008, the New Jersey Supreme Court adopted the 'most significant relationship' test, as found in the Restatement (Second) of Conflict of Laws." Id. (quoting P.V. v. Camp. Jaycee, 197 N.J. 132 (N.J. 2008)).  This test "embodies all of the elements of the governmental interest test plus a series of other factors deemed worthy of consideration."  Id.   "If the various state laws are materially different, however, the Court must weigh the considerations contained in the Restatement and determine which state has the 'most significant relationship' to each cause of action asserted in the suit." In re Mercedes-Benz Tele Aid Contract Litig., 267 F.R.D. 113, 119 (D.N.J. 2010).

The first step in the inquiry is to determine whether a conflict exists. There is no conflict between the laws of New Jersey, Arizona and Nevada in regards to the elements of a claim for tortious interference with contract. Compare Rainbow Apparel, Inc. v. KCC Trading, Inc., No. 09-CV-05319, 2010 U.S. Dist. LEXIS 51664, at *22 (D.N.J. May 26, 2010) ("a claim for tortious interference must allege: (1) the existence of the contract (or the prospective economic relationship); (2) interference which was intentional and with malice; (3) the loss of the contract or prospective gain as a result of the interference; and (4) damages"); with Hill v. Peterson, 35 P.3d 417, 420 (Ariz. App. 2001) ("plaintiff must prove the existence of a valid contractual relationship or business expectancy; the interferer's knowledge of the relationship or expectancy;

intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted. Furthermore, the interference must be improper as to motive or means before liability will attach.") (internal quotations and citations omitted); with Williams v. Univ. Med. Ctr. Of S. Nev., 688 F. Supp. 2d 1134, 1139-40 (D. Nev. 2010) ("Under Nevada law, to establish a claim for intentional interference with contractual relations, a plaintiff must establish: (1) a valid and lineexisting contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage.") See also Creston Elecs. Inc. v. Cyber Sound & Sec. Inc., No. 11-3492, 2012 U.S. Dist. LEXIS 16132, at *28-29 (D.N.J. Feb. 9, 2012) (no conflict of law exists between New Jersey and Arizona law on tortious interference claims).

Defendants Zimmer argue that summary judgment as to the tortious interference with the Individual Defendants' contracts with Stryker is proper because: "(1) as to alleged conduct after April 1, 2011, the Zimmer Corporate Defendants have been prevented from inducing or causing such breach by operation of law; and (2) as to alleged conduct prior to April 1, 2011, Stryker has failed to proffer any competent evidence sufficient to create a genuine issue of material fact that the Zimmer Corporate Defendants intentionally or improperly induced or caused any breach." (Zimmer Corp. Def's Mot. for Summ. J. 10-11).  On April 1, 2011, the Honorable Judge Katherine S. Hayden entered an order preliminarily enjoining "Defendants, and all parties in active concert or participation with them, from using current Stryker employees and/or former Stryker employees recently hired by Zimmer, to solicit, induce or influence, or attempting to solicit, induce or influence, any person engaged as an employee, independent contractor or agent

of Stryker to terminate his, her or its employment and/or business relationship." (ECF No. 7).

While the Court agrees with Defendants that the Zimmer Corporate Defendants have been

prevented from inducing or causing such breach by operation of law after April 11, 2011,

questions of facts exist as to Zimmer Corporate Defendants actions prior to the preliminary

injunction. Defendants argue that Zimmer "informed each of [the Individual Defendants] in

writing that it 'expecte[d] and require[d]' them to refrain from any activity or communications

that would be inconsistent with their non-competition and non-solicitation agreements with

Stryker." (Zimmer Corp. Def.'s Mot. for Summ. J. 12). While this may be true, it does not

preclude other fact questions as to Zimmer's actual conduct.

Defendants also argue that Stryker cannot prove that there was "interference which was

intentional and with malice." (Id. 13). To establish wrongful, intentional interference, Stryker

must show that the Zimmer Corporate Defendants "willfully and maliciously interfered" with the

relevant non-competition agreements. Carpet Group Int'l v. Oriental Rug Imps. Ass'n, Inc., 256

F. Supp. 2d 249, 299 (D.N.J. 2003). In essence, Zimmer argues that because they acted to

"advance their own interests and financial position," Plaintiff can "not establish the necessary

malice or wrongful conduct." (Zimmer Corp. Def.'s Mot. for Summ. J. 13). Plaintiff argues that

Zimmer's goal was to "usurp Stryker's entire market share in Las Vegas and Nevada and leave

Stryker unable to compete by raiding Stryker's employees and capitalizing on their relationships

with, and knowledge of, Stryker's customers." (Pl.'s Resp. to Zimmer Corp. Def.'s Mot. for

Summ. J. 20). Based exclusively on the commutations between Zimmer and Stryker employees

and the timing of the mass resignation, there is clearly a question of fact as to whether Zimmer

acted intentionally.

Additionally, "although competition may constitute a justification, a defendant claiming a business-related excuse must justify not only its motive and purpose, but also the means used." Lamorte Burns & Co., Inc. v. Walters, 770 A.2d 1158, 1171 (2001) (internal citations omitted). This Court cannot sanction a privilege to compete if doing so "would justify and legitimize what otherwise would be tortious conduct." Id. at 308 (citing Wear-Ever Aluminum, Inc. v. Townecraft Industries, Inc., 182 A.2d 387, 394 (N.J. Super. Ct. Ch. Div. 1962). Whether Zimmer Corporate Defendants acted tortiously or with justification is a question of fact, thus summary judgement as to the tortious interference with contract claim is denied.

### H. Count V: Stryker's Corporate Raiding Claim Against Zimmer Corporate Defendant

In Count V of the Amended Complaint, Stryker brings a claim against Zimmer Corporate Defendants for corporate raiding or corporate piracy. (Pl.'s Compl. ¶ 234-240). Corporate piracy, as defined by the Plaintiff, is the "inducement of an employee to move to a competitor... [when] such an inducement has an unlawful or improper purpose, or uses unlawful or improper means." (Pl.'s Resp. to Zimmer Corp. Def.'s Mot. for Summ. J. 33). In support of this, Plaintiff cites to two New Jersey Superior Court decisions and one from the Arizona Court of Appeals that discuss the solicitation of an employee from one employer by another. Wear-Ever Aluminum; Avtec Indus., Inc., v. Sony Corp., 500 A.2d 712 (N.J. Super Ct. App. Div. 1962); Sec. Title Agency, Inc. v. Pope, 200 P.3d 977 (Ariz. Ct. App. 2008). Plaintiff correctly argues that in such situations, if the soliciting employer is doing so with malice, the law may impose liability. Wear-Ever Aluminum at 391; Avtec Indus. at 715; Sec. Title Agency, at 499. However, each decision cited refers to solicitation in the context of tortiuous interference claims, claims addressed in Counts IV, VI-VII of Plaintiff's Complaint.

23

The allegations set forth in Count V are substantially identical to the allegations raised in Counts IV, VI-VII of the Complaint. Count V is therefore facially duplicative. The power of the federal court to prevent duplicative claims is intended "foster judicial economy and the 'comprehensive disposition of litigation' " Curtis v. Citibank, NA., 226 F.3d 133, 138 (2d Cir. 2000) (quoting Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183(1952)). Zimmer Corporate Defendants' Motion for Summary Judgment with regard to Count V is granted.

### I. Counts VI and VII: Stryker's Tortious Interference with Prospective Economic Advantage Against Defendants

Stryker's Amended Complaint also asserts two claims for tortious interference with prospective economic advantage in connection with its workforce (Count VI) and its customers (Count VII). (Id. ¶¶ 241- 252).

#### (1) Zimmer Corporate Defendants

As with tortious interference with contract, Defendants assert there is a conflict of law while Plaintiff argues that New Jersey law should apply. As above, there is no conflict between the laws of the three states with regard to elements of a claim for tortious interference with prospective economic advantage. Compare Rainbow Apparel, Inc. v. KCC Trading, Inc., No. 09-CV-05319, 2010 U.S. Dist. LEXIS 51664, at *22 (D.N.J. May 26, 2010) (same elements as those for interference with contract) with Hill, 35 P.3d at 420 (same elements as those for interference with contract); with Lauster v. Grand Sierra Resort Corp., No. 3:10-cv-00305, 2010 U.S. Dist. LEXIS 137848,at *6-7 (D. Nev. Dec. 29, 2010) ("In the absence of a contract, a plaintiff may still establish the tort of intentional interference with prospective economic advantage by showing: (1) a prospective contractual relationship between the plaintiff and a third party; (2)

24

knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff.") (internal citations); see also  Creston Elecs. Inc. 2012 U.S. Dist. LEXIS 16132, at *28-29 (no conflict of law exists between New Jersey and Arizona law on tortious interference claims).While the specific language may vary slightly,  New Jersey, Nevada and Arizona statutes all require that the defendant know about the contract or expectancy, acted improperly, and that a breach/loss/disruption of the contract or expectancy actually occurred, causing damages. Thus, this Court will apply New Jersey law to Stryker's claims against Zimmer for tortious interference.

A claim for tortious interference must allege: (1) a reasonable expectation of economic advantage to plaintiff, (1) interference done intentionally and with "malice," (3) causal connection between the interference and the loss of prospective gain, and (4) actual damages. See Printing Mart-Morristown v. Sharp Elecs. Corp., 563 A.2d 31, 36 (1989); see also Varrallo v. Hammond, Inc., 94 F.3d 842, 848 (3d Cir. 1996). The reasonable expectation of economic advantage to the plaintiff does not require a contractual right. See Varrallo, 94 F.3d at 848. The malice requirement or this tort does not constitute "ill will" but rather "it means that harm was inflicted intentionally and without justification or excuse." Lamorte, 167 N.J. at 306. The malice factor is determined on an individual basis, under a flexible standard where the court looks to the defendant's actions in the context of the facts presented. (See id.; see also M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc., 205 F. Supp. 2d 306 (D.N.J. 2002). "Often it is stated that the relevant inquiry is whether the conduct was sanctioned by the 'rules of the game,'

for where a plaintiff's loss of business is merely the incident of healthy competition, there is no compensable tort injury." Lamorte, 167 N.J. at 306-307 (citations omitted).

Defendants argue that for conduct post the Preliminary Injunction, summary judgment is proper because "Stryker has failed to present evidence that it had a reasonable expectation of a prospective economic advantage as to either its workforce or its customers." (Zimmer Corp. Def.'s Mot. for Summ. J 16). As to prospective economic advantage from its workforce, they argue that the Individual Defendants were at-will employees, and employee turnover was high. (Id.). With regard to prospective economic advantage from its customers, Zimmer Corporate Defendants argue that "the hospitals' and doctors' purchasing choices are a matter of professional discretion." (Id.) The evidence indicates that Zimmer hired Stryker's employees en masse for the purpose of securing Stryker's customers. The targeting of the Las Vegas and Arizona branches, and the coordinated switching of clients to branch managers leaves a fact question as to Zimmer's intent to interfere with Stryker's prospective economic advantage. As to Stryker's reasonable expectation to this advantage, the facts tend to show that had it not been for the actions of Zimmer and the coordinated Individual Defendants, Stryker would not have lost the customers they had, nor would they have lost the profits they did. The evidence does not conclusively show that the departure of Stryker employees was not a coordinated effort by all Defendants, and thus summary judgment as to tortious interference with prospective economic advantage with Stryker's customers and workforce is denied as to the Corporate Defendants.

### (2) Individual Defendants

Soliciting Stryker customers or Stryker employees was a clear violation of the Individual Defendants contracts with Stryker, thus as to Stryker's tortious interference claims against the

26

Individual Defendants, the economic loss doctrine applies, and thus the claims are barred. See supra Part III.C. Summary judgment is thus granted to the Individual Defendants as to Counts VI and VII.

### J. Count VIII: Stryker's Unfair Competition Claim Against Defendants
(1) Zimmer Corporate Defendants

In Count VII of the Amended Complaint, Stryker asserts a claim for unfair competition against all Defendants. (Pl.'s Compl. ¶¶ 253-258). Zimmer argues "even if unfair competition is deemed by this Court to be a viable claim under the relevant and applicable state law, Stryker has not marshaled enough evidence sufficient to create a genuine issue of material fact that the Zimmer Corporate Defendants have engaged in conduct that would constitute the same." (Zimmer Corp. Def's Mot. for Summ. J. 18).

The first issue is which state's law applies. Zimmer Corporate Defendant does not argue that one of the three state laws is more appropriate than the other; instead, Zimmer argues that under either New Jersey, Nevada or Arizona, Stryker's unfair competition claim fails based on a lack of competition evidence. (Id.) Stryker argues that there is no conflict of law between the three states, and thus New Jersey law should apply. New Jersey's common law of unfair competition "is an amorphous area of jurisprudence. It knows of no clear boundaries . . .The concept is as flexible and elastic as the evolving standards of commercial morality demand." Duffy v. Charles Schwab & Co., Inc., 123 F. Supp. 2d 802, 815 (D.N.J. 2000) (quoting N.J. Optometric Ass'n v. Hillman-Kohan Eyeglasses, Inc., 365 A.2d 956, 965 (Ch. Div.1976)). As Defendants mention, the common law of unfair competition is "not completely boundless." Reckitt Benckiser Inc. v. Tris Pharma, Inc., 2011 U.S. Dist. LEXIS 19713, 25-26 (D.N.J. Feb. 28, 2011).  "The law of unfair competition has its roots in the common-law tort of deceit: its

27

general concern is with protecting consumers from confusion as to source." Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 157, (1989). Indeed, it has been stated that "[t]he essence of unfair competition is the practice of palming off one's product as that of another." Squeezit Corp. v. Plastic Dispensers, 106 A.2d 322, 325 (App. Div.1954). Most cases of unfair competition encompass one of two business torts: the passing off of one's goods or services as those of another and unprivileged imitation, SK & F, Co. v. Permo Pharm. Lab., Inc., 625 F.2d 1055, 1062 (3d Cir. 1980). Thus, "[a]lthough it is impossible to categorize all acts which constitute unfair competition, there are a few fundamental elements that are definite. In essence... it consists of the misappropriation of one's property by another-property which has some sort of commercial or pecuniary value." N.J. Optometric Ass'n v. Hillman-Kohan, 365 A.2d 956, 965 (N.J. Super. Ct. Ch. Div. 1976) (citations omitted). .

In Arizona, the common law doctrine of unfair competition is "based on principles of equity." Fairway Constructors, Inc. v. Ahern, 970 P.2d 954, 956 (Ct. App. 1998) (citing House of Westmore, Inc. v. Denney, 151 F.2d 261, 265 (3d Cir.1945); Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Corp., 101 N.Y.S.2d 483, 488 (1950). The doctrine "encompasses several tort theories, such as trademark infringement, false advertising, 'palming off' and misappropriation" Fairway, 970 P. 2d at 956.  The "general purpose of the doctrine [of unfair competition] is to prevent business conduct that is 'contrary to honest practice in industrial or commercial matters.'" Id. (citations omitted).

In Nevada, the "tort of unfair competition is extremely flexible and has been defined very broadly." Custom Teleconnect, Inc. v. International Tele-Services, Inc., 254 F. Supp. 2d 1173,

1182 (D. Nev. 2003). The Court in <u>Custom Teleconnect</u> also rejected the Defendant's contention

that unfair competition always involves the passing off of goods as if from another. <u>Id.</u>

New Jersey, Nevada and Arizona have all defined the common law tort of unfair

competition broadly. No true conflict exists between the three case law defined causes of action

thus this Court will apply New Jersey's law on unfair competition. Under New Jersey law,

summary judgment is not appropriate, because there are questions of fact as to whether the

alleged conduct of Zimmer was inappropriate, giving them an unfair competitive edge over

Stryker. "The judicial goal should be to discourage, or prohibit the use of misleading or deceptive

practices which renders competition unfair." <u>Ryan v. Carmona Bolen Home for Funerals,</u> 341

N.J.Super. 87, 92 (App.Div.2001). Thus summary judgment is denied with regard to the unfair

competition claim.

(2) Individual Defendants

To succeed on a civil conspiracy claim, there must be an underlying tort claim, thus the

economic loss doctrine applies, and the claims are barred. <u>See</u> <u>supra</u> Part III.C. Summary

judgment is thus granted to the Individual Defendants as to Count X.

### K. Count IX: Stryker's Aiding and Abetting a Breach of Fiduciary Duty Claim Against Zimmer Corporate Defendant

In Count IX of the Amended Complaint, Stryker asserts a claim against the Zimmer

Corporate Defendants for aiding and abetting the Individual Defendants' alleged breaches of

fiduciary duty. (Pl.'s Compl. ¶ 259-264). Defendants argue that summary judgment is proper on

this claim because "Stryker has failed to present evidence sufficient to create a material fact that

the Zimmer Corporate Defendants provided substantial assistance for any of the Individual

Defendant's purported breaches of fiduciary duty." (Zimmer Corp. Def's Mot. for Summ. J. 22).

Zimmer Corporate Defendants and Stryker agree that New Jersey law controls this claim. (Zimmer Corp. Def's Mot. for Summ. J. 22; Pl.'s Resp. to Zimmer Corp. Def's Mot. for Summ. J. 30). An actionable claim for aiding and abetting a breach of fiduciary duty requires: (1) the existence of a fiduciary relationship; (2) breach of duty thereunder; (3) knowing and substantial assistance in that breach by another; and (4) damages. <u>Wiatt v. Winston & Strawn LLP</u>, 838 F. Supp. 2d 296, 307 (D.N.J. 2012) (citations omitted). Additionally, New Jersey law requires that a defendant 'knowingly' aid and abet a breach of fiduciary duty. <u>Id.</u>

As this Court has granted summary judgment as to the breach of fiduciary duty claims against Individual Defendant's, there is no actionable claim aiding and abetting a breach of fiduciary duty, as there was no "breach of duty thereunder." Thus, summary judgment is granted in favor of Zimmer Corporate Defendants on Stryker's claim of aiding and abetting a breach of fiduciary duty.

### L. Count X: Stryker's Civil Conspiracy Claim Against Zimmer Corporate Defendant, Defendant Giebelhaus and Defendant Graveline

Count X of the Amended Complaint asserts a claim for civil conspiracy against all Defendants. (Pl.'s Compl. ¶ 276). Stryker contends that the Zimmer Corporate Defendants agreed, conspired and acted in concert with the Individual Defendants to achieve the "unlawful design" of 'Project Viva' and 'Project Sun Devil,' and that those Individual Defendants undertook the overt acts" to effectuate those designs. (<u>Id.</u> ¶ 268-276); Stryker further contends that the Zimmer Corporate Defendants "agreed, conspired and acted in concert with Graveline and Giebelhaus to devise and execute an illegal scheme." (<u>Id.</u> ¶ 275).

With regard to Defendant Giebelhaus and Graveline, New Jersey law governs Stryker's tort claims because their contract with Stryker provides for the application of New Jersey law.

(Def. Graveline Mot. for Summ J. 18, Ex. B ¶ 8.2). Choice of law analysis must be made with

regard to the civil conspiracy claim against the Zimmer Corporate Defendant. There are four

elements to the tort of civil conspiracy in New Jersey: (1) a combination of two or more persons;

(2) a real agreement or confederation with a common design; (3) the existence of an unlawful

purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special

damages. Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 414

(3d Cir. 2003). In Arizona, "for civil conspiracy to occur, two or more persons must agree to

accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing

damages." Rowland v. Union Hills Country Club, 757 P. 2d 105, 110 (Ariz. Ct. App. 1988)

(citing Savard v. Selby, 453 P. 2d 229 (Ariz. Ct. App. 1973); Uvodich v. Ariz. Bd. of Regents,

453 P.2d 229 (Ariz. Ct. App. 1969). Furthermore, conspiracy is a derivative tort. Rowland, 757

P. 2d at 110. Under Nevada law, an "actionable conspiracy consists of a combination of two or

more persons, who by some concerted action, intend to accomplish an unlawful objective for the

purpose of harming another, and damage results from the act or acts." Sutherland v. Gross, 772

P.2d 1287, 1290 (Ariz.1989) (citing Collins v. Union Fed. Savings & Loan, 662 P. 2d 610, 622

(Ariz. 1983)). All three jurisdictions require: (1) a combination of two or more persons; (2) an

agreement; (3) the existence of an unlawful purpose, or a lawful purpose achieved by unlawful

means and (4) damages, thus no conflict exists and New Jersey law is applied to the civil

conspiracy claim.

     Zimmer Corporate Defendants argue that Stryker's civil conspiracy claim is inappropriate

because "first, for the reasons set forth above, each of the underlying claims of actionable

conduct fail for various reasons; therefore, the alleged conspiracy to commit same fails. Second,

the record contains no evidence that the Zimmer Corporate Defendants and one or more of the

Individual Defendants conspired to agree to a course of conduct designed to accomplish an

unlawful purpose." (Zimmer Corp. Def's Mot. for Summ. J. 20). This Court has already held that

there are genuine issues of material facts with regard to the underlying actionable conduct. There

are additionally questions of fact regarding the alleged agreement between Zimmer Corporate

Defendants and one or more of the Individual Defendants. Based on the alleged communications

between Zimmer and Stryker, and the targeting of the specific branch managers and sales

representatives, it is improper at this time to grant summary judgment in favor of the Zimmer

Corporate Defendants as to the civil conspiracy claim.

Regarding Defendants Graveline and Giebelhaus, both argue that as a matter of law, they

cannot be held liable for conspiring with their employer. (Defendant Graveline Mot. for Summ.

J. 18-19). Under New Jersey law, when the officers or agents of a corporation are acting in their

corporate capacity, they cannot conspire with the corporation. Sunkett v. Misci, 183 F. Supp. 2d

691, 722 (D.N.J. 2002); Johnston v. Baker, 445 F. 2d 424, 427 (3d Cir. 1974)( "a corporation

cannot conspire with itself anymore than a private individual can, and it is the general rule that

the acts of the agent are the acts of the corporation.")

Plaintiff argues that a "civil conspiracy action may be maintained if independent third

parties are alleged to have joined the conspiracy." (Pl.'s Resp. in Opp'n to Def. Graveline's Mot.

for Summ. J., 34, Mar. 30, 2012, ECF No. 281) (citing Robison v. Cantebury Village, Inc., 848

F. 2d 424, 413 (3d Cir. 1988)). The Court finds the facts of Robison and similar cases inapposite

to the facts at hand. Thus, based on the general rule that officers of a corporation cannot conspire

with their employer, summary judgment is granted with regard to the civil conspiracy count

against Graveline and Giebelhaus.

## IV. CONCLUSION

For the foregoing reasons, the Motions for Summary Judgment by Zimmer Corporate

Defendant, Defendant Graveline, Defendant Giebelhaus and Individual Defendants are **granted**

**in part, denied in part.**

Nov. 14, 2012

Dennis M. Cavanaugh, U.S.D.J.

Original:   Clerk's Office
cc:         All Counsel of Record
            The Honorable Joseph A. Dickson, U.S.M.J.
            File

33